UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

2003 DEC 23  P 12: 44

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| FRED B. DUFRESNE,<br><br>    Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, ADOBE SYSTEMS INCORPORATED and MACROMEDIA, INCORPORATED,<br><br>    Defendants. | Civil Action No. 02-11778 RCL |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PLAINTIFF FRED B. DUFRESNE TO PRODUCE DOCUMENTS PROVIDED TO HIM BY INTECAP -- CORRECTED VERSION

Defendants Microsoft Corporation, Adobe Systems Incorporated, and Macromedia Incorporated (collectively "Defendants"), hereby move to compel Plaintiff Fred B. DuFresne to produce certain non-privileged or nonprotected documents and things that he obtained from non-party InteCap as a result of a subpoena served by the Defendants.

**I.    Introduction/Summary of Argument**

On August 29, 2003, Defendants subpoenaed non-party InteCap, Incorporated ("InteCap") to produce certain documents and things relevant to claims at issue in this lawsuit. See Centurelli Dec. Exhibit A (Subpoena to InteCap). InteCap was involved in efforts to license or sell U.S. Patent No. 5,835,712 (the "'712 patent"), the patent-in-suit, for Mr. DuFresne. The subpoena requested various documents related to these activities, which are clearly relevant to, among other things, the damages issues in this case. Rather than send these documents directly to the Defendants, InteCap sent them to Mr. DuFresne's counsel. Mr. DuFresne summarily withheld a large volume of these documents under various theories, ultimately providing the Defendants with a lengthy privilege log listing 160 entries, largely with boilerplate descriptions and privilege claims.

These InteCap documents were improperly withheld for the following reasons:

First, all but two of the entries claim work product protection, even though there is no showing that the documents were prepared in anticipation of litigation. For the most part, the documents are correspondence between InteCap and Mr. DuFresne. InteCap and Mr. DuFresne had a *business* relationship, not a legal one, in which DuFresne retained InteCap to help him sell or license the '712 patent. There is no evidence to show that this relationship involved litigation in any way. To the contrary, all of the evidence shows that InteCap was a business partner and nothing more.

Second, InteCap is not a law firm. Nor is InteCap a party to this lawsuit. Nor does InteCap have a legal interest identical to Mr. DuFresne with regard to this lawsuit. There is thus no basis for Mr. DuFresne's refusal to produce these documents on the grounds of attorney-client privilege.

Third, several of the documents were disclosed to third parties (including parties that Mr. DuFresne sued on the patent-in-suit), thereby waiving any applicable privilege.

Fourth, and finally, Mr. DuFresne cannot properly withhold any of the InteCap documents as "irrelevant." Defendants subpoenaed InteCap for documents that relate to Mr. DuFresne and the patent in suit. InteCap hired its own attorneys, who reviewed InteCap's documents to identify responsive documents. Defendants were not asking InteCap to produce documents about other matters, or other unrelated patents. It is inconceivable that documents that InteCap's lawyers deemed responsive to Defendants' narrowly drawn subpoena do not meet the low threshold required of relevance.

## II.    BACKGROUND

Mr. DuFresne hired InteCap on September 6, 2000 to assist him with his efforts to license or sell the '712 patent. InteCap is not a law firm. See Centurelli Dec. Exhibit B (http://www.intecap.com). "InteCap is an international consulting firm dedicated to advising clients on economic, valuation, and strategy issues related to intellectual property (IP) and

complex commercial disputes." See also, Centurelli Dec. Ex. C (InteCap engagement letter dated September 6, 2000 to Mr. DuFresne, InteCap production I 004115-18).

On August 29, 2003, Defendants subpoenaed InteCap to produce certain documents and things relevant to claims at issue in this lawsuit. See Centurelli Dec Ex. A (Subpoena to InteCap). The subpoena requested various documents from InteCap concerning its efforts to license or sell the '712 patent for Mr. DuFresne.

In response to Defendants' subpoena, InteCap assembled five boxes of documents, claiming that just one (1) of the documents in these boxes was privileged. See Centurelli Dec. Ex. D (Letter to Centurelli from Taylor dated October 9, 2003 regarding responsive documents). Specifically, InteCap's attorney wrote:

> InteCap has located and assembled five boxes of documents potentially responsive to Defendants' subpoena. ***All of these documents relate to,*** or were generated in connection with, ***InteCap's work for Mr. DuFresne.*** With the exception of one multi-page document, ***InteCap is not asserting that any of these potentially responsive documents are the subject of any privilege or confidentiality claim*** belonging to InteCap.

Exhibit D (Letter to Centurelli from Taylor dated October 9, 2003 regarding responsive documents) (emphasis added).

InteCap forwarded these documents to Mr. DuFresne's attorneys for their review prior to their production to Defendants under the terms of a confidentiality agreement that existed between them. On November 11, 2003, during Mr. DuFresne's deposition, Mr. DuFresne produced the InteCap log that is the subject of this dispute. It has 160 entries claiming one of or a combination of the following privileges: (1) Attorney-client Privileged ("AC") (33 claims), (2) Common Interest Privilege/Community of Interest Privileged ("CIP") (159 claims), (3) Work Product Privileged ("WPP") (157 claims), and/or (4) Irrelevant Subject Matter ("IRS") (158 claims). See Centurelli Dec. Ex. E (InteCap log).

When asked about these claims, Mr. DuFresne's counsel responded:

> With regard to the correspondence ***and/or*** notes involving Mr. DuFresne, InteCap ***and/or*** Mintz Levin, they are protected from production pursuant to the attorney-client privilege, attorney work product immunity, community of interested privilege / common interest privilege ***and/or*** on the basis that the documents are not relevant to this matter

3

*and/or* not responsive to the subpoena. As you are aware, Mintz Levin represents Mr. DuFresne in this matter.

InteCap has worked for Mintz Levin in the capacity of a non-testifying expert pursuant to Rule 26(b)(3) and (b)(4) of the Federal Rules of Civil Procedure, in certain instances. Furthermore, there is a community of interest / common interest privilege between Mr. DuFresne and InteCap with regard to the '712 patent. Moreover many of the documents are not responsive to the subpoena and/or not relevant to this case.

With regard to the correspondence with John Cosulich, A. Batson, Angela Berry, Cynthia Casby and/or Gary Hecker, the documents were withheld on the basis of attorney client privilege and/or not relevant to this matter.

Exhibit F (Letter to Centurelli from Cronin dated November 20, 2003) (emphasis added).

### III.  LAW OF PRIVILEGE

A party asserting a privilege claim has the burden of establishing all of the elements of the asserted privilege. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics* ("*Mass Eye*"), 167 F.Supp.2d 108, 114-115 (D. Mass 2001).

The attorney-client privilege evolves from the attorney-client relationship, which has been described to exist when:

> (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *Mass Eye*, 167 F.Supp. 2d at 117.

A communication between an attorney and his client is protected from disclosure when:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at this instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. *Mass Eye*, 167 F.Supp. 2d at 117.

A pre-existing document sent to an attorney does not itself become privileged because it was forwarded to the attorney. *Fischer v. United States*, 425 U.S. 391, 401 (1976) (holding that documents transferred to an attorney are not privileged unless they were privileged before the transfer).

The "common interest" or joint attorney-client privilege exception applies in circumstances where an otherwise attorney-client privileged communication was also

4

communicated to a third party. In other words, common interest exception is not an independent basis for privilege, rather an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party. *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002); see also *In re Regents of the University of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996). It can be applied when "two or more clients consult or retain an attorney on particular matters of common interest" or when the client or the client's lawyer communicate with "a lawyer representing another in a matter of common interest," for example in formulating a common legal strategy. *Cavallaro*, 284 F.3d at 249. Thus, as a threshold inquiry, there must be an attorney-client communication. See, e.g., *International Insurance Co. v. Newmont Mining Corp.*, 800 F.Supp. 1195, 1196-97 (S.D.N.Y.1992) (common interest doctrine inapplicable because no joint representation).

Assuming there is, first, an attorney-client privileged communication, the analysis proceeds to the "common interest" itself. The "common interest" between the multiple clients requires that "the nature of the interest be legal, and that the legal interest be the same, or nearly the same, legal interest." *Mass Eye*, 167 F.Supp. 2d at 124 (citing *In re Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996) and *Federal Deposit Ins. Corp. v. Ogden Corp.*, 202 F.3d 454 (1st Cir. 2000)). "[T]he proponent of the exception must establish cooperation in fact toward the achievement of a common objective." *Federal Deposit Ins. Corp. v. Ogden Corp.*, 202 F.3d at 461. A common business interest is not enough, even if that business interest has as a component a concern about litigation. *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("While each member shared a concern about the threat of shareholder litigation, there is no evidence that they formulated a joint legal strategy to deal with the possibility.").

Work-product protection may apply to documents prepared in anticipation of litigation by or for another party or for that other party's representative. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics* ("*Mass Eye II*"), 2001 U.S. Dist. LEXIS 23785, 5 (D. Mass 2001).

> Although "there is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, . . . there must be more than a remote possibility of litigation." *Fox v. California Sierra Financial Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988) (citing *Garfinkle v. Arcata Nat'l Corp.*, 64 F.R.D. 688, 690 (S.D.N.Y. 1974); *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 725 n.6 (N.D. Ill. 1978)). Otherwise stated, "there must be an identifiable prospect of litigation (i.e., specific claims that have already arisen) at the time the documents were prepared." Id. at 525 (citing *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 42-43 (D. Md. 1974)); see also *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 303 U.S. App. D.C. 316, 5 F.3d 1508, 1515 (D.C. Cir. 1993) (the document must be "created 'with a specific claim supported by concrete facts which [**62] would likely lead to litigation in mind'" (quoting Coastal States Gas Corp. v. Department of Energy, 199 U.S. App. D.C. 272, 617 F.2d 854, 864 (D. C. Cir. 1980))).

*PacamorBearings, Inc. v. Minebea Co., Ltd.*, 918 F.Supp. 491, 512-3 (D. N.H. 1996).

There are two types of work-product: (1) trial preparation material generated by or for a party or the party's representative, referred to as "classic" work-product, see, e.g., *Hickman v. Taylor*, 329 U.S. 495, 509-514 (1947); and (2) documents containing the mental impressions, opinions, or litigation theory generated by or for a party or the party's representative, referred to as "opinion" work-product. *Id.* Based on the entries in the InteCap log, the documents that are the subject of the present motion only constitute the first, or non-opinion, type of work-product.

## IV. ARGUMENT

### A. The InteCap privilege log is so inadequate as to render any attempt to ascertain whether a legitimate privilege claim exists hopeless.

Mr. DuFresne bears the burden of establishing that a withheld document is privileged. Fed. R. Civ. P. 26(b) provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents or things not produced in a manner that, without revealing the information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. P. 45(d)(2), states that:

6

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

> The adequacy of the log is measured by the log itself. In order to prevent dilatory discovery practices, the party asserting the privilege is not allowed to supplement their log in the context of a motion to compel.

>> It is clear that some of the descriptions supplied by the plaintiff in its withheld document list are facially insufficient to support a finding that either form of protection [attorney client privilege or work product] is merited. . . . In its Brief, plaintiff now seeks to augment or correct those descriptions. If permitted to do so, the documents as newly described would probably be found to be privileged. The Court must therefore decide whether to hold plaintiff to the representations made in its list or permit it to modify them in response to defendant's motion.

>> This Court has consistently emphasized that the party asserting the attorney-client privilege bears the burden of proof. Before compiling its withheld document list, plaintiff could easily have ascertained the standard of particularity expected by this Court and could have met that standard. Allowing it to do so now would encourage dilatory discovery practices.

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1443 (D. Del. 1989) (internal citations omitted). See also, *In re General Instrument Corp. Securities Lit.*, 190 F.R.D. 527 (N.D.Ill. 2000) (ordering the production of all documents for which the description was too vague to evaluate the claim of privilege and refused to review the documents in camera.).

Mr. DuFresne's "InteCap Privilege log" is facially insufficient to meet his burden of showing his entitlement to withhold documents on any theory. Of the 160 entries, not one explains the relationship between the named individuals. For example, plainly a document cannot be withheld on the basis of an attorney-client privilege claim if there is no attorney involved. Yet many entries in Mr. DuFresne's InteCap log that assert this privilege do not

identify a single attorney. It is not the Defendants' burden to determine if a document was properly withheld based upon some privilege. It must be clear from the log.

The descriptions of documents in Mr. DuFresne's InteCap log are also nothing more than repetitive boilerplate, which makes judging the sufficiency of the claim impossible. Of the 160 entries, the description "Correspondence re: InteCap, Inc. and Fred B. DuFresne re: anticipated litigation" is repeated over 110 times on documents that range in date from September 5, 2000 to December 18, 2002. Several of the entries bearing this description even appear to be communications with third parties. Finally, several of the entries are undated, and dates are of course extremely important in evaluating a claim of privilege, especially in the context of a work product claim where there must be a "palpable threat of litigation." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001) (holding that "there must be a palpable threat of litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might some day result in litigation.").

**B.    Because these documents were not created for or in anticipation of litigation, work product protection does not apply.**

Mr. DuFresne bears the burden of establishing that documents withheld on the basis of work product were actually prepared in anticipation of litigation. Not only does his log fail to do so, the undisputed information that is available shows that he is not entitled to make this claim for any document on his log.[1]

On September 6, 2000, Mr. DuFresne retained InteCap to help him sell or license the '712 patent. The engagement letter not only acknowledged that the relationship was for the purpose of licensing the '712 patent but also that *InteCap was under no obligation to assist Mr. DuFresne if litigation may result*:

> This agreement confirms the retention of InteCap, Inc. ("InteCap") by Fred DuFresne ***to provide independent professional services in connection with***

---

[1] Mr. DuFresne alleges that all but two of the withheld documents are protected by the work product doctrine.

> *the licensing of the ['712] patent*. . . . InteCap acknowledges and agrees that it will use commercially reasonable efforts to negotiate licenses and other agreements involving the '712 patent upon the terms set forth in the licensing proposal approved by DuFresne. . . .
>
> DuFresne recognizes that there is a risk that litigation could be initiated by one or all of the Potential Licensees or that litigation may be required in order for DuFresne to enforce its' rights under the patent. ***DuFresne understands that InteCap is not required to render litigation services pursuant to this agreement***.

Centurelli Dec. Ex. C. (Agreement between Fred DuFresne and InteCap [I004115-8]. Because InteCap was working with Mr. DuFresne in a business capacity, rather than a legal one, the withheld documents could not have been created "for or in anticipation of litigation."

Moreover, no explanation is offered in the privilege log as to how documents created as far back as two years prior to the filing of this lawsuit were created in anticipation of litigation, or even what litigation was anticipated. All of the documents dated prior to 2002 share the exact same description in the log, namely, "Correspondence re: InteCap, Inc. and Fred B. DuFresne re: anticipated litigation." This description is completely inadequate to determine how this correspondence between InteCap employees and Mr. DuFresne was for any reason other than the engagement letter indicated – the *business* purpose of providing licensing assistance.

The same is true of the documents created during and after 2002. There is no explanation in the log to justify any conclusion other than InteCap was offering business services to Mr. DuFresne. The vast majority of log descriptions for the documents dated during and after 2002 have the same description as those created before 2002. Moreover, several of these documents were disclosed to third parties, thereby waiving any potential work product claim that could attach.

In particular, several of the entries[2] for 2002 list John Cosulich, Angela Berry, and Linda Saraiva as recipients of the documents in question. None of these individuals are believed to be licensed attorneys in any state and the log fails to establish that a protected relationship existed between Mr. DuFresne, Mr. DuFresne's attorneys, InteCap, and any of these individuals. Furthermore, the log fails to establish that any of these communications was for the purpose of seeking or rendering legal advice concerning that protected relationship.

Although his log is silent on this issue, the above-quoted correspondence from Mr. DuFresne's counsel suggests that he would have the Court believe that at some point the relationship between Mr. DuFresne and InteCap changed, and that InteCap transformed into a non-testifying expert for this case. The facts, however, are to the contrary.[3]

After Defendants subpoenaed them, InteCap was not represented by Mr. DuFresne's attorneys, but rather retained the law firm of Dorsey & Whitney for purposes of responding to the subpoena.

In response to Defendants' subpoena, InteCap assembled five boxes of documents, claiming that just 1 of the documents in these boxes was privileged. See Centurelli Dec. Ex. D (Letter to Centurelli from Taylor dated October 9, 2003 regarding responsive documents). In reporting the results of this document collection effort, InteCap's attorney did not give any indication that InteCap had been engaged to provide non-testifying expert services for this lawsuit, or otherwise suggest that the relationship between InteCap and Mr. DuFresne was

---

[2] Entries 91-94, 96-99, 101-105, 107, and 112-114.
[3] Although it is unclear if Plaintiff intends to rely on an alleged "common interest privilege" in further support of its claim of work product protection, such a theory is a non-starter. As discussed more fully below, the common interest privilege applies to attorney-client privilege communications, not work product documents. More fundamentally, Mr. DuFresne and InteCap do not share a common legal interest, as is also required to make a showing under the common interest privilege.

10

anything other than business-related. To the contrary, on his review, only one of the documents that Defendants requested was privileged:

> InteCap has located and assembled five boxes of documents potentially responsive to Defendants' subpoena. All of these documents relate to, or were generated in connection with, InteCap's work for Mr. DuFresne. ***With the exception of one multi-page document, InteCap is not asserting that any of these potentially responsive documents are the subject of any privilege or confidentiality claim belonging to InteCap.***

Exhibit D (Letter to Centurelli from Taylor dated October 9, 2003 regarding responsive documents) (emphasis added). In accordance with the confidentiality provisions of the engagement letter, InteCap forwarded these documents to Mr. DuFresne's attorneys who withheld a substantial volume of them. The Defendants asked Mr. DuFresne's counsel to justify how they could withhold documents from a non-party, Mr. DuFresne obtusely responded:

> With regard to the correspondence ***and/or*** notes involving Mr. DuFresne, InteCap ***and/or*** Mintz Levin, they are protected from production pursuant to the attorney-client privilege, attorney work product immunity, community of interested privilege / common interest privilege ***and/or*** on the basis that the documents are not relevant to this matter ***and/or*** not responsive to the subpoena. As you are aware, Mintz Levin represents Mr. DuFresne in this matter.
>
> InteCap has worked for Mintz Levin in the capacity of a non-testifying expert pursuant to Rule 26(b)(3) and (b)(4) of the Federal Rules of Civil Procedure, in certain instances. Furthermore, there is a community of interest / common interest privilege between Mr. DuFresne and InteCap with regard to the '712 patent. Moreover many of the documents are not responsive to the subpoena and/or not relevant to this case.

Exhibit F (Letter to Centurelli from Cronin dated November 20, 2003) (emphasis added). Notably, Mr. DuFresne's counsel says that InteCap "has worked" with Mintz Levin "in certain instances." The letter does not say that InteCap is engaged as a non-testifying expert in this case, and Mr. DuFresne has not produced a letter or other document showing that InteCap had also been engaged for this purpose. Moreover, if such a letter existed, it should have been at least listed on Mr. DuFresne's InteCap log, and it is not, as best Defendants can tell.

11

### C. No attorney client relationship existed between InteCap and Mr. DuFresne.

As noted, InteCap is not a law firm and Mr. DuFresne was not seeking, nor was InteCap offering, legal advice. The engagement letter explicitly states that the purpose of the union was for licensing the '712 patent. Centurelli Dec. Ex. C.

There is also no basis here for an assertion of common interest privilege.

The common interest privilege is not an independent basis for privilege, but rather an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party. *Cavallaro*, 284 F.3d 236, 250. It applies when the client or the client's lawyer communicates with a lawyer representing another in a matter of common *legal* interest. A common business interest is insufficient.

The *Cavallaro* court identified two scenarios in which a legal interest was present. The first is where two parties are jointly represented by an attorney on a particular matters of common interest. The second is where two parties are separately represented by counsel, but share a common interest in formulating a joint defense effort or strategy. See, e.g., *Cavallaro*, 284 F.3d at 249; *Bank Brussels*, 160 F.R.D. at 447.

Neither scenario is present here. InteCap and Mr. DuFresne are not jointly represented. To the contrary, InteCap retained Dorsey & Whitney to represent it in responding to Defendants' subpoena. InteCap is also not a party to this action and InteCap's interest in the patent-in-suit, if any, is purely financial, which is insufficient for the privilege to apply. *Cavallaro*, 384 F.3d 236 (finding separate owners of two merged businesses share a financial interest, but not a legal interest); *Bank Brussels*, 160 F.R.D. 437 (legal interest does not extend to parallel financial interests because there is no common legal strategy).

### D. Because several of the documents were disclosed to third parties, any privilege that did exist has been waived.

Once a privileged document has been disclosed to a third party, the privilege is waived. *Cavallaro v. United States*, 284 F.3d 236, 246-7 (1st Cir. 2002). Several of the documents were disclosed to third parties, yet Mr. DuFresne still claims these documents are privileged.

Entries 5, 7, 8, 10, 12-14, 16, 17, 19, 21, 91-94, 96-99, 101-105, 107-108, 112-114, and 142 list either Angela Berry, John Cosulich, or Linda Saraiva as recipients. The log does not identify who these individuals are or what their relationship is to Mr. DuFresne. As such, they should be treated as third parties and the disclosure of documents to them waived any applicable privileges, assuming contrary to fact that such privileges even existed.

### E. Mr. DuFresne had no right to second guess InteCap and withhold documents that it had already deemed relevant and responsive to the Defendants' subpoena.

The Defendants' subpoena requested all documents relevant to the '712 patent. Relevancy is a low threshold. *Jodoin v. Toyota Motor Corp.*, 284 F.3d 272, 278 (1st Cir. 2002). Defendants' subpoena to InteCap was narrowly tailored to request documents relevant to Mr. DuFresne and the work that InteCap had done in connection with the '712 patent. InteCap's attorneys independently made an assessment that certain documents were responsive to these requests. Yet Mr. DuFresne contends that 159 of the 160 entries in his privilege log relate to irrelevant subject matter.[4] Mr. DuFresne's counsel cannot second-guess InteCap in this manner. It, as the subpoenaed party, was required to produce documents that it considered to be responsive to Defendants' subpoena. InteCap worked with Mr. DuFresne in connection with attempts to license or sell the '712 patent. To the Defendants' knowledge, no other relationship existed—and Mr. DuFresne has not pointed to any—and thus it is simply not plausible that InteCap could have documents that relate to Mr. DuFresne and his patent, and yet are somehow not relevant to this lawsuit.

---

[4] Only entry 1 does not cite irrelevant subject matter as a basis for withholding the document.

13

Entry 135 on Mr. DuFresne's InteCap log provides one illustration of just how untenable, if not entirely specious, Mr. DuFresne's position is on making irrelevance objections. This entry claims that an email from Mr. DuFresne to various people at InteCap is irrelevant subject matter. Centurelli Dec. Ex. E. The email relates to a conversation that James Donohue had with Jeffrey Ranck, an attorney for Microsoft, and discusses prior art that anticipates the claims of the '712 patent. Not only is this document clearly relevant to invalidity, but also Mr. DuFresne has charged Microsoft with willful infringement as a result of discussions that Mr. DuFresne had with Mr. Ranck before the lawsuit was filed. Clearly this document is highly relevant.

## V.   CONCLUSION

For the reasons discussed above, Defendants respectfully request that the Court order Mr. DuFresne to produce all of the documents listed on Mr. DuFresne's InteCap privilege log.

Dated: December 23, 2003

_____
Frank E. Scherkenbach (BBO #653819)
Kurt L. Glitzenstein (BBO #565312)
Craig R. Smith (BBO #636723)
Christopher Centurelli (BBO #640974)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
TEL: (617) 542-5070

Attorneys for Defendants
MICROSOFT CORPORATION, ADOBE
SYSTEMS INCORPORATED and
MACROMEDIA, INCORPORATED

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ~~mail~~/hand on December 23, 2003.

_____
Christopher Centurelli

15