UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRED B. DUFRESNE,

     Plaintiff,

     v.

MICROSOFT CORPORATION, ADOBE
SYSTEMS INCORPORATED and
MACROMEDIA, INCORPORATED,

     Defendants.

Civil Action No. 02-11778 RCL

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SEPARATE TRIALS ON LIABILITY AND DAMAGES**

## I.    INTRODUCTION

This case involves three defendants, eighteen patent claims, numerous versions of at
least ten accused products, a damages period that spans at least seven years, and collective
damages claims in excess of fifteen billion dollars.  Defendants respectfully request that the
Court bifurcate trial in this case such that damages would be tried by the same jury in a separate
phase following a determination, if any, of liability.[1]  Conducting a separate trial on damages
would streamline the issues for the jury to consider in the liability phase and allow the jurors to
focus on whether Plaintiff's patent is invalid or not infringed.  If the answer to either of these
questions is "yes," or if the Court determines that the patent is unenforceable because of
Plaintiff's inequitable conduct in procuring it, the jury will never need to consider the extensive
and complicated evidence regarding Plaintiff's stratospheric damages claim.  Even if there were
a damages phase, the issues would likely be simplified by the liability phase, particularly if some

---

[1] Defendants requested that discovery and trial be bifurcated at the outset of the case.  *See*
Docket # 34.  Although the Court denied Defendants' request at that time, Defendants
understood that the issue of bifurcation of trial could be raised at a later date.  Defendants submit
that, as discovery finally nears an end, this issue is ripe and should be resolved so the parties may
engage in efficient trial planning.

of the products and/or claims fall away. Bifurcating liability and damages is routine in complex patent cases such as this one, and would be efficient for the Court, the jury, and the parties.

## II.     LEGAL FRAMEWORK

Federal Rule 42(b) provides that the Court, "[I]n furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue..." Fed. R. Civ. P. 42(b). The district court has "broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed. Cir. 1987); *see also Gonzalez-Marin v. Equitable Life Assur. Soc.*, 845 F.2d 1140, 1145 (1st Cir. 1988).

Patent cases are "often uniquely amenable to bifurcation because of the complex nature of the damages determination and the extensive discovery that is often necessary to prove the nature and extent of those damages." *Novopharm Ltd. v. Torpharm, Inc.*, 181 F.R.D. 308, 310 (D. Del. 1998). Indeed, courts routinely hold separate trials on liability and damages in patent cases. *See id.* (ordering separate trials on liability and damages in patent suit); *see also Avia Group Int'l, Inc. v. Nike, Inc.*, 1991 WL 340569 (D. Or.) (concluding that liability and damages present separate issues and ordering separate trials on liability and damages in a case involving at least eight accused products); *Paine Webber, Jackson & Curtis, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 587 F. Supp. 1112 (D. Del. 1984) (bifurcating liability and damages); *Arendi v. Microsoft*, (D.R.I. Sept. 13, 2004) ("I'm going to bifurcate this case into a liability and damages stage. You may recall that I broached this subject with counsel a few weeks ago, and I've been mulling it over since, and I'm convinced that that's the appropriate thing to do to make this case digestible for the jurors.") (attached as Exhibit A to the Declaration of Jennifer K. Bush).

In *Novopharm*, the Court explained why the concerns of prejudice, expedition, and judicial economy favor bifurcating liability and damages in patent suits:

> The trial of the damages question in [a patent] suit is often difficult and
> expensive, while being easily severed from the trial of the questions of validity
> and infringement of the patent. A preliminary finding on the question of liability

> may well make unnecessary the damages inquiry, and thus result in substantial
> saving of time of the Court and counsel and reduction of expense to the parties.
> Moreover, separate trial of the issue of liability may present counsel the
> opportunity to obtain final settlement of that issue or appeal without having
> reached the often time-consuming and difficult damages question.

*Novopharm*, 181 F.R.D. at 311 (quoting from *Smith v. Aleyska Pipeline Serv. Co.*, 538 F.Supp.

977, 982-83 (D. Del. 1982), *aff'd*, 758 F.2d 668 (Fed. Cir. 1984)). The Court in *Industrias*

*Metálicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 6 (D.P.R. 1997) echoed the same concerns,

observing that "bifurcation would simplify the issues for the jury, and that simplification will

certainly help to expedite the jury's task."

## III.   ARGUMENT

Bifurcation is particularly appropriate in this case, which involves complex issues of both

liability and damages.  Unlike a typical case involving just one technology, this software case

involves five different accused technologies, all of which can be used to create what are called

dynamic webpages, but each of which does so in a somewhat different way.  Unlike a static

webpage, in which the content is fixed and the source for the page must be manually edited in

order to make changes, a dynamic webpage can be programmed so that its content automatically

updates.  An example of this is a date marker.  In order for a static webpage to always be marked

with the current date, a programmer would have to manually edit the source every night at

midnight to reflect the new date.  A dynamic webpage can be programmed such that the

webpage will automatically update every time the page is requested.  Plaintiff does not claim to

have invented the concept of the dynamic webpage.  He instead claims to have invented a

particular way of creating dynamic webpages.  In this case, he alleges that the use of five

different technologies infringes his patent:  Microsoft's Active Server Pages (ASP) and

ASP.NET, Macromedia's Cold Fusion, Java Server Pages ("JSP"), and PHP, which was included

with Adobe's GoLive product.

In order to determine whether any of these technologies infringes the patent-in-suit, the

jury will of course need to understand how each works, and could be faced with the challenge of

considering multiple different non-infringement arguments.  Moreover, the accused technologies

were independently developed, over different periods of time, including work that was done

before the application for the patent-in-suit was filed. This history will be very important in the consideration of non-infringement and invalidity issues, in that it demonstrates that Mr. DuFresne was in fact the *last* person in the relevant group to make his alleged invention, not the first person as is at least required to have a valid and enforceable patent. These issues of invalidity will be compounded by the fact and expert evidence regarding numerous other prior art articles and products.

Under Plaintiff's allegations, the liability issues will also require the jury to understand and apply three different theories of liability: (1) direct infringement, (2) inducement, and (3) contributory infringement. *See* 35 U.S.C. § 271(a), (b), and (c). Direct infringement occurs when one "makes, uses, offers to sell, or sells" a patented invention in the United States. *See* 35 U.S.C. § 271(a). With regard to direct infringement, the jury will be asked to consider whether each asserted patent claim has been directly infringed by each defendant. Active inducement requires, among other things, a finding that the defendant knew that his actions would induce infringement. *See Beauregard/Logic Controls v. Delaware Capital Formation, Inc.*, 350 F.3d 1327, 1342 (Fed. Cir. 2003). With regard to Plaintiff's charge of active inducement, the jury will be asked to consider three separate sets of facts and make separate determinations regarding, among other things, whether each defendant knew its actions would cause infringement. Contributory infringement occurs when one sells, in the United States, a "component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article of commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). Plaintiff's charge of contributory infringement will require the jury to evaluate, among other things, whether each of ten different products is a staple article of commerce capable of substantial non-infringing uses.

During the liability phase, the jury will also be asked to consider Plaintiff's charges of willful infringement.[2] This will require the jury to hear three different sets of evidence regarding when each defendant became aware of the patent-in-suit. The jury will also have to consider each defendant's individual defenses to the charge of willful infringement, to determine whether each defendant was justified, and acted in subjective good faith, in continuing to make and sell its accused products after becoming aware of the patent-in-suit.

With regard to damages, the differences between and among the defendants and the differences among the numerous versions of the ten products at issue will make for an exceedingly complex damages analysis, far beyond that presented in most patent cases. Because Plaintiff seeks a reasonable royalty for each of the allegedly infringing products, the jury will be asked to determine, for each defendant, what the parties would have agreed to in a hypothetical negotiation at the time the infringement began. *See, e.g., Unisplay, S.A. v. American Electronic Sign Co., Inc.*, 69 F.3d 512, 517 (Fed. Cir. 1995). Since there are three defendants, the jury will have to posit three separate hypothetical negotiations involving companies with very different financial conditions, licensing histories, and product lines.

A key threshold issue the jury will need to consider is whether the parties to each of the three hypothetical negotiations would have arrived at a paid-up, lump sum royalty, or whether they would have agreed to a running royalty. On this point, Defendants will present evidence regarding the considerations that go into such a decision, and the reasons why a lump sum is appropriate in this case. Plaintiff's expert has, by contrast, concluded that the parties would have agreed to staggering running royalties. Given this dichotomy, Defendants' expert, Mr. Troxel, will present his opinions regarding the lump sum royalties to which the parties would have agreed, and he will also present corrections to each of Plaintiff's ten running royalty calculations.

Another critical issue will be the basis for customer demand for the accused products. Plaintiff's damages expert has opined that damages should be awarded on the entire revenues of

---

[2] Defendants do not seek to bifurcate the questions of willful infringement from the liability phase. Plaintiff has taken the position that all issues, including willful infringement, should be tried together. *See* Declaration of Jennifer K. Bush, ¶ 3.

the accused products. However, the entire market value rule permits recovery of damages based on the value of an entire product containing patented and non-patented features only if "the patent related feature is **the basis for customer demand**." *Tec Air Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999) (emphasis added). Thus, the jury will need to consider the bases for demand of various versions of each of ten products over a period of at least seven years: Microsoft's Windows Server operating system, Windows Client operating system, Visual Studio 6.0, Visual Studio.NET, Visual Interdev, and FrontPage; Macromedia's Cold Fusion, Cold Fusion Studio, and Dreamweaver; and Adobe's GoLive product. These products have different uses, different customers, different feature sets, and different abilities with regard to dynamic webpages. These considerations factor differently into the demand for each product, and Defendants' damages expert will present a different framework for correcting Plaintiff's expert's damages calculations for each product.

Addressing this issue of basis for customer demand will also involve consideration of survey information that shows how people actually use some of the accused products. Towards that end, in addition to their damages-calculation expert, Microsoft also has a survey expert to explain the survey results.

The jury will need to hear substantial other evidence during the damages phase that is not necessary to a determination of liability. They will need to hear evidence relating to the different revenues and profit margins for each of the ten products. The parties' damages experts disagree regarding the proper measure of profitability to use, as well as the proper way to calculate the profitability of each product, issues which can have a significant impact on a running royalty calculation. There will be no need for the jury to hear detailed information regarding the profits and revenues for the accused products during the liability phase.[3]   The liability and damages

---

[3] Plaintiff may argue that the case should not be bifurcated because there will be overlap in the evidence regarding the commercial success of the accused products. This argument has been considered and rejected by courts because, as explained in *Avia*, "The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the claimed invention is, broadly speaking, an accepted product and a big seller." 1991 WL 340569 * 3; *see also Paine Webber*, 587 F. Supp. at 1116.

phases would also involve different witnesses.  In addition to their damages experts, Defendants will likely call witnesses from their marketing groups to testify about the marketing of, and demand for, each of the accused products.  It is unlikely that there would be any need for these witnesses to testify during the liability phase.  It would be efficient for the Court, the jury, and for the parties for this evidence to be presented only upon a finding of liability.

Given the number of products and the complexity of the evidence, "bifurcation would simplify the issues for the jury, and that simplification will certainly help to expedite the jury's task." *Industrias Metálicas,* 172 F.R.D. at 6.  Bifurcating damages would allow the jury to focus during the liability phase on the substantial issues involved in the infringement and invalidity analyses, without being burdened with additional complicated evidence regarding damages.  In short, if the jury finds Plaintiff's patent invalid or not infringed, or if the Court finds it unenforceable, the damages issues will never need to be addressed, let alone decided.  Even if there were to be a damages trial, the liability phase could eliminate some products, parties, and/or claims, which could greatly simplify the case and the evidence the jury needs to consider.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court conduct separate trials on liability and damages, with any damages trial to begin immediately following a verdict on liability, if any, and with the same jury.

Dated:  October 31, 2005

_____/Jennifer K. Bush/_____
Frank E. Scherkenbach (BBO #653819)
Kurt L. Glitzenstein (BBO #565312)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone:  (617) 542-5070

Jennifer K. Bush (admitted *pro hac vice*)
Jason W. Wolff (admitted *pro hac vice*)

Attorneys for Defendants
MICROSOFT CORPORATION, ADOBE
SYSTEMS INCORPORATED and
MACROMEDIA, INCORPORATED