UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRED B. DUFRESNE,<br><br>      Plaintiff and<br>      Counter-Defendant,<br><br>v.<br><br>MICROSOFT CORPORATION, ADOBE SYSTEMS INCORPORATED and MACROMEDIA, INCORPORATED,<br><br>      Defendants and<br>      Counter-Claimants. | Civil Action No. 02-11778 WGY |

**DEFENDANT MICROSOFT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE UNTIMELY KLAUSNER AND GEMINI EXPERT REPORTS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .......................................................................................................................2

    A.    The Court Should Strike Mr. Klausner's Supplemental Expert Reports, Just As Judge Lindsay Struck Mr. Klausner's Previous Supplemental Expert Reports. ..............................................................2

    B.    The Court Should Strike Exhibit C to Mr. Gemini's May 29, 2007 Report. .......................................................................................8

III. CONCLUSION ...................................................................................................................9

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Cerqueira v. American Airlines, Inc.*,
  2007 WL 1040686, at *3 (D. Mass. Apr. 9, 2007) ............................................................. 5

*Chimie v. PPG Industries,*
  No. Civ.A. 01-389, 2004 WL. 3393000 (D. Del. Jan. 16, 2004) ........................................ 8

*Net 2 Press, Inc. v. 58 Dix Avenue Corp.*,
  266 F. Supp. 2d 146 (D. Me. 2003) .................................................................................... 6

*Russo v. Base-Line Inc.,*
  No. 02 C 738, 2005 WL. 736230 (N.D. Ill. Mar. 30, 2005) ................................................ 6

*WMS Gaming, Inc. v. International Game Technology*,
  184 F.3d 1339 (Fed. Cir. 1999) ........................................................................................... 6

## I. INTRODUCTION

After construing the disputed claim terms at the Markman hearing on May 21, 2007, the Court permitted the parties to serve "narrow" supplemental reports in order to address issues necessitated by the claim construction rulings. (Tr. at 51:4.)  Because Plaintiff had repeatedly used untimely supplementation as an excuse to rework his case—serving four new expert reports on infringement and validity issues long after the deadlines for doing so, all of which were stricken by Judge Lindsay (*see* Dkt. Entries of October 6, 2005 and June 16, 2006)—Microsoft requested guidance on the permissible scope of such supplementation.  The Court cautioned the parties that they should not be submitting "whole different expert report[s]" (Tr. at 50:24-50:25), which is exactly what Microsoft suspected Plaintiff would do, and indeed, is exactly what he has done.

Plaintiff's two original reports on infringement addressed products of three companies (Adobe, Macromedia, and Microsoft), and eighteen asserted claims.  The two reports totaled 31 pages.  The exhibit directed to Microsoft's products totaled 99 pages.  (*See* Declaration of Jason W. Wolff ("Wolff Decl.") at ¶¶ 3-4, Exs. A & B.)  Plaintiff's new supplemental report on infringement had to address only a subset of the original accused Microsoft products and only three of the original eighteen asserted claims, and yet it was an order of magnitude larger than his original reports, with 57 pages and 2217 pages of supporting claim charts and exhibits, much of which was produced for the first time, and none of which was identified until, the day of his supplemental expert report.  (*See* Wolff Decl. at ¶ 5, Ex. C.)[1]

The story is largely the same with Plaintiff's new invalidity report.  Plaintiff's original report was 17 pages, with no exhibits.  (*See id.* at ¶ 6, Ex. D.)  His supplemental report was 39 pages, with 24 pages of exhibits.  (*See id*. at ¶ 7, Ex. E.)

Mr. Klausner, Plaintiff's liability expert, is plainly using the Court's construction as an excuse to do now what he should have, and could have, done when required to in 2003 by Judge

---

[1] Because of their volume, Microsoft has attached exemplary portions of the exhibits to the supplemental reports, as opposed to the entire exhibits.  Plaintiff's expert reports and exhibits total over 2,300 pages and just over 145MB in files.  The reports and exhibits were emailed to counsel for Microsoft in the course of 17 emails spanning from May 29 at 4:50 pm PST to May 30 at 4:42 am PST.  (*See* Wolff Decl. at ¶ 8, Ex. F.)

1

Lindsay's Scheduling Order. The new theories espoused by Mr. Klausner are a wholesale revision of this case on the eve of trial. They were not in any way prompted by the Court's constructions. One glaring example is Mr. Klausner now offering five pages of opinion directed solely to indirect infringement, where his original reports had none. This was clearly in response to Microsoft's motion for summary judgment of no indirect infringement, which was based in part on Plaintiff's failure to come forward with any evidence of indirect infringement, and which Microsoft filed several days before Mr. Klausner's supplemental reports. (*See* Dkt. No. 316.) Other examples abound, and are discussed in detail below.

Plaintiff's damages expert, Mr. Gemini, piggybacked on Mr. Klausner's supplementation to try to remedy a fundamental flaw in his original reports that renders his opinions unreliable, namely, that Mr. Gemini failed to analyze the impact of each of the *Georgia-Pacific* factors on the reasonable royalty. Mr. Gemini's supplementation was prompted by Microsoft's motion *in limine* on this issue, not the Court's claim constructions. (*See* Dkt. No. 295.)

In short, Plaintiff should not be permitted to use the Court's constructions as an excuse to yet again attempt to retool his case, and ambush Microsoft on the eve of trial with a raft of new expert opinions. The Court should strike Mr. Klausner's supplemental reports of May 29, 2007 in their entirety, as well as Exhibit C to Mr. Gemini's report of the same date.

## II. ARGUMENT

### A. The Court Should Strike Mr. Klausner's Supplemental Expert Reports, Just As Judge Lindsay Struck Mr. Klausner's Previous Supplemental Expert Reports.

At the May 21 Markman hearing, the Court directly addressed the issue of supplementation of expert reports, and made clear that any such supplementations must be narrow, i.e., necessitated by the Court's constructions, and should not be used as an excuse to present wholly different reports (Tr. 47:21-51:5):

> MR. SCHERKENBACH: I just want you to be aware of the history in this case with respect to doing it, and maybe you are. We went round and round and round with Judge Lindsay on this and he issued a number of orders precluding amending expert reports.
>
> THE COURT: You know, I appreciate that. But in my mind -- I'll give you my own history. Judge Lindsay is a superb judge and I don't

2

>want to set at naught things that he worked on.
>
>    … Because the expert -- now, if they change something other than to conform to my tentative claim constructions, well, then I have done violence to Judge Lindsay's order.
>
>    …
>    MR. SCHERKENBACH:  You've answered my question.
>
>    THE COURT:  If we get a whole different expert report that's one thing.  But if the expert has assumed -- this HTML issue, if the experts assume that, and now tentatively, and I think it's broader than that, and the expert then speaks to that issue, I don't fault either your experts or theirs. Five days to supplement in that narrow sense. …

Mr. Klausner's principal alleged basis for supplementation in his May 29, 2007, infringement expert reports is the Court's constructions of "server" and "client."  For every single claim element, Mr. Klausner observes that the Court construed these terms to each require a computer running a program (a client is "a computer running a program that requests information from a server" and a server is "a computer running a program that receives requests for information from a client").  (*See e.g.* Wolff Decl. at ¶ 5, Ex. C at pp. 15-16.)  He then states that because the construction he used in 2003 did not include the word "computer," he is entitled to supplement.  (*See id.* at p. 16.)

First and foremost, none of Mr. Klausner's opening reports included ***any*** claim constructions, so there is no way to assess his assertion that "[t]he Court's constructions of these terms differ from the constructions I reviewed and used in 2003." (*Id.* at p. 16.)

More to the point on "client" and "server," Plaintiff's ***own*** proposed constructions of these terms "include the word 'computer.'"  Plaintiff offered the following proposed constructions of these terms:

>Server: ***A computer*** or computer software that receives requests for information from a client

3

> Client: ***A computer*** or computer software that requests information from a server

(Dkt. No. 299 at 4, 6.)

Additionally, Mr. Klausner knew full well at the time of his original expert reports that Microsoft was proposing that each of these requires a computer. Microsoft had disclosed these proposed constructions on May 30, 2003, five months before Mr. Klausner served his opening expert report on non-infringement. (Wolff Decl. at ¶ 9, Ex. G at pp. 2-5.) Microsoft's proposed constructions were taken directly from the express definition in the patent. For example, for server:

> [A] "server" is a hardware system running a software program that manages access to stored information, in particular information formatted with HTML codes, which information is retrieved in response to a request from a client and transmitted to the client for processing and display to a user.

(*Id.*)

Moreover, and contrary to the repeated suggestion otherwise in his supplemental reports, Mr. Klausner has previously considered Microsoft's proposed inclusion of computer in its claim constructions—and concluded that it did not in any way change his analysis. In one of his untimely reports from 2005, Mr. Klausner stated that even if the Court were to adopt Microsoft's construction of "server," that would not impact his opinions:

> The Defendants appear to be confused as to whether a "server" is software or hardware, or a combination of the two, and make ineffective arguments as to the presence or significance of such a distinction. ***The issue of what a server is does not affect the conclusions reached in my Reports.***

(Wolff Decl. at ¶ 10, Ex. H.)

What Mr. Klausner has done now is to use an event that he previously said "does not affect [his] conclusions" as an excuse to rewrite his original reports. This is exactly the methodology Plaintiff employed in 2005 in the series of expert reports that Judge Lindsay struck from this case. There, Plaintiff pointed to source code produced after the deadline for expert reports in order to justify untimely opinions whose basis had nothing to do with source code, but instead was based principally on documents available to Mr. Klausner prior to the deadline. (Dkt. No. 262 at 11-12 (adopted at Docket Entry of June 16, 2006).)

4

In view of the magnitude of Mr. Klausner's supplementations, we turn below to several specific examples illustrating how pervasively Plaintiff and Mr. Klausner have attempted to change their whole approach to this case under the guise of supplementations, none of which truly stems from the Court's claim constructions.

**New Analysis Specific To Accused Products.** In his original reports, Mr. Klausner did not consider any of the accused products separately. He analyzed only the accused ASP feature by itself, rather than how that feature is used and explained in the context of the specific products accused of infringement (Windows Server 2000 and 2003, and Windows Client XP). Mr. Klausner's new report fundamentally changes that approach. His Exhibits at Tabs 1, 2, and 3 separately analyze each of the accused products in the context of each of the asserted claims. (*See e.g.* Wolff Decl. at ¶ 5, Ex. C.) He should not be permitted at this late date to change his analysis and approach in such a fundamental way having nothing to do with the Court's claim constructions.

**New Bases For Analysis.** Mr. Klausner should also be precluded from relying on extensive new evidence. Specifically, Mr. Klausner attaches *several thousand* pages of new documents and analysis as Exhibits D-I of his report. (*See e.g.* Wolff Decl. at ¶ 5, Ex. C.) Much of this material was produced for the first time, and all of it was identified as material on which Mr. Klausner purports to rely for the first time, with Mr. Klausner's May 29, 2007 supplemental report. Much of it follows the same general approach: Mr. Klausner has evidently now taken a close look at each of the accused products, searched for information regarding the ASP feature, and generated a series of demonstratives to highlight and try to explain the way in which the ASP feature is used, and how it is presented and explained to potential users. He then draws heavily from and summarizes this information in the body of his report. It is all late, is not motivated by the Court's claim constructions, and should be stricken.

Plaintiff failed to produce this information during the discovery period, let alone provide any indication of that he intended to rely upon any of it, and so he and his expert should be precluded from relying on it at trial. *See, e.g., Cerqueira v. American Airlines, Inc.*, --- F. Supp.

5

2d ----, No. 05-11652, 2007 WL 1040686, at *3 (D. Mass. Apr. 9, 2007) (Young, J.) (excluding evidence that was not disclosed during discovery); *Net 2 Press, Inc. v. 58 Dix Avenue Corp.*, 266 F.Supp.2d 146, 161 (D. Me. 2003) (granting summary judgment and striking information not included in interrogatory response from affidavit submitted in opposition to motion for summary judgment); *Russo v. Base-Line Inc., No*. 02 C 738, 2005 WL 736230, *7 (N.D. Ill. Mar. 30, 2005) (granting summary judgment regarding patent invalidity defense the bases of which were not listed in response to an interrogatory and noting "Base-Line cannot now, after the close of discovery, and in the midst of dispositive motions, change the playing field in an attempt to gain an advantage by surprise. We shall not allow such tactics.").

**Indirect infringement.** In his timely expert reports, Mr. Klausner provided no opinions regarding indirect infringement. Now that Microsoft has pointed out, in its motion for summary judgment of no indirect infringement (Dkt. No. 316), Plaintiff's failure to meet his burden of proof on this issue at any point over the past four years, Plaintiff is attempting to backfill his lack of evidence at the eleventh hour through Mr. Klausner's supplemental report. (Wolff Decl. at ¶ 5, Ex. C at pp. 12-13 & 34-39.) For instance, Mr. Klausner offers new opinions about Microsoft's sales and distribution of the accused products, the content of Microsoft's web site (www.microsoft.com), the extent to which the accused products are used as web servers, Microsoft's alleged encouragement of others to create a system covered by claim 26, and whether the accused products are staple articles of commerce suitable for substantial non-infringing uses. (*See id*.) This is not justified or warranted by anything in the Court's construction.

**Secondary Considerations of Non-Obviousness**. A plaintiff can challenge a *prima facie* showing of obviousness by pointing to secondary considerations of non-obviousness. *See WMS Gaming, Inc. v. Int'l Game Technology*, 184 F.3d 1339, 1359 (Fed. Cir. 1999). Klausner's timely served expert reports were silent on this issue as well. He now seeks to offer new opinions about the person of ordinary skill in the art, long-felt but unmet need, and the commercial success of the patented inventions. (Wolff Decl. at ¶ 6, Ex. D at pp. 3, 37-38.) Again, these issues are in no way driven by the Court's claim constructions.

6

**Embedded within.**  Mr. Klausner offers extensive new evidence and opinion directed to the "embedded within" claim feature.  Specifically, over numerous pages of his report he identifies instances in which ASP tags are allegedly embedded within HTML tags, even drawing parallels between ASP and the embodiments of the '712 patent.  (*See e.g.* Wolff Decl. at ¶ 5, Ex. C at pp. 20-21, 32-33, 45-46, 49-59.)  But the Court adopted verbatim Plaintiff's proposed wording for "embedded within," namely, "between."  Mr. Klausner must also have been fully aware at the time of his original reports of the embodiments in the '712 patent that he now relies on in his supplemental report, in which the executable tag is between the delimiters of an HTML tag.  In short, the Court's construction could not have been a surprise to Mr. Klausner, and does not justify his new opinion regarding claim 26.  (*See* Wolff Decl. at ¶ 5, Ex. C at p. 31.)

**Buffering.**  Mr. Klausner's supplemental infringement report also contains a wholly new theory of infringement.  Specifically, he now attaches great significance to the fact that the accused Microsoft products allegedly employ a "buffer" to store the output HTML file before it is sent to the client.  (*See* Wolff Decl. at ¶ 5, Ex. C at p. 27.)  While he states in his supplemental report that this is an "important[]" feature of ASP, it is not discussed anywhere in his original infringement reports.  Moreover, Mr. Klausner's analysis of this issue purports to turn on the Court's constructions of "hypertext source" (specifically in the context of "processing").  As with "embedded within," the Court adopted Plaintiff's construction of "hypertext source," and so this too is well outside the permissible scope of supplementation by Mr. Klausner.[2]  The significance that Mr. Klausner now attaches to this issue, and his new reading of the claim, also impacts the invalidity issues in the case, since the claim must be construed and applied the same

---

[2] Moreover, Mr. Klausner's analysis appears to be at odds with Plaintiff's own understanding of this term.  Mr. Klausner is evidently taking the position that the hypertext source is the entirety of the file.  Plaintiff vigorously opposed this reading in its claim construction briefs.  For example, Plaintiff argued:  "Defendants [sic] proposed construction suffers from a number of flaws.  First, the construction incorrectly refers to an entire 'single, self-sufficient *file*' rather than the source itself, which is the text with codes within the file or document, or a portion of it, that indicate how the document should be displayed."  (Dkt. 299, at 13 of 24, emphasis in original.)   "The source referred to in those claims is clearly just the text with codes inserted into a document indicating how the page should be displayed, not an entire "single, self-sufficient file.'"  (*Id*. at 14 of 24.)  "Defendants' construction incorrectly refers to an entire 'single, self sufficient file' rather than the source itself…and adds extraneous limitations requiring the source to be a 'single' and 'self-sufficient' file, rather than a source…"  (Dkt. 300 at 14 of 23)

7

way for both infringement and validity purposes.[3]

**New Testing.**  Mr. Klausner also conducted extensive recent testing of the accused products, and offers a raft of new opinions regarding their operation.  (*See e.g.* Wolff Decl. at ¶ 5, Ex. C at pp. 16-19, 24-33, 43-53.)  His stated purpose was to determine whether the accused products "operate when installed into a computer."  (*See* Wolff Decl. at ¶ 5, Ex. C at p. 8.)  This is specious.  Mr. Klausner should have conducted any necessary tests of the accused products on a computer prior to serving his original expert reports.  They are, after all, computer software products.  Mr. Klausner's testing and new infringement analysis were prompted not by the Court's construction of "server" or other terms, but by Microsoft's summary judgment motions, which pointed up Plaintiff's failure to come forward with evidence of infringement.  Courts exclude results of testing where a party waits "until essentially the eve of trial to conduct [] testing."  *Chimie v. PPG Industries*, No. Civ.A. 01-389, 2004 WL 3393000, *1 (D. Del. Jan. 16, 2004) (plaintiff's disagreement with the court's claim construction rulings provided no persuasive reason why it waited until essentially the eve of trial to conduct testing).  This too should not be permitted here.

      **B.**      **The Court Should Strike Exhibit C to Mr. Gemini's May 29, 2007 Report.**

Mr. Gemini's May 29, 2007, supplemental report consists mainly of updates to his damages calculations based on Plaintiff's dropping of claims for damages based on foreign sales, as well as many products he initially accused of infringement, and also to take into account revenues realized since his last calculations.  Microsoft has no objection to this supplementation, which if anything illustrates the proper and limited role of supplementation prior to trial.

However, Microsoft does object to Exhibit C to Mr. Gemini's report, where he attempts to address his failure—as pointed out in Microsoft's motion *in limine* to exclude Mr. Gemini's testimony—to provide an opinion regarding the impact of the *Georgia Pacific* factors on his

---

[3] To the extent that the Court denies in whole or part Microsoft's motion to strike Mr. Klausner's supplemental reports and the voluminous production made by Plaintiff last week, Microsoft requests leave to serve an additional supplemental expert report from its liability expert to address this fundamental shift announced in Plaintiff's reports.  In this regard, we note that Judge Lindsay's original Scheduling Order contemplated that the party bearing the burden of proof would have the opportunity to respond to issues raised in the other party's reports.  (Dkt. Entry of February 6, 2003.)

reasonable royalty analysis. (*See* Dkt. No. 295 (denied without prejudice).) In his original report, he merely listed the *Georgia-Pacific* factors, together with evidence that may or may not fit within the *Georgia-Pacific* framework, but with no real analysis. Exhibit C provides a new set of opinions regarding whether each factor favors Microsoft, Plaintiff, or neither. (*See* Wolff Decl. at ¶ 11, Ex. I.) These new opinions could not possibly have been prompted by the Court's construction of the term "server," or any other term, and so should be stricken.

## III.  CONCLUSION

Microsoft and its experts developed their opinions and have been preparing for trial based on the theories and opinions that Messrs. Klausner and Gemini disclosed in their timely reports. Allowing them to interject the new theories and opinions contained in Mr. Klausner's May 29, 2007 reports, and Exhibit C to Mr. Gemini's May 29, 2007 report, at this late date and not in any way necessitated by the Court's claim constructions, would be unfairly prejudicial to Microsoft. They accordingly should be stricken.

Dated June 6, 2007

Jason W. Wolff
Frank E. Scherkenbach (BBO #653819)
Kurt L. Glitzenstein (BBO #565312)
Thomas A. Brown (BBO #657715)
Samuel E. Sherry (BBO #667527)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone:  (617) 542-5070
Facsimile:  (617) 542-8906
Emails:  scherkenbach@fr.com; glitzenstein@fr.com; tbrown@fr.com; sherry@fr.com

Jason W. Wolff (admitted *pro hac vice*)
Jennifer K. Bush (admitted *pro hac vice*)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA  92130
Telephone:  (858) 678-5070
Facsimile:  (858) 678-5099
Emails:  wolff@fr.com; bush@fr.com

Attorneys for Defendant and Counter-Claimant
MICROSOFT CORPORATION

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 6th day of June, 2007.

                                                         Jason W. Wolff

10741718.doc